Exhibit 13

# ORIGINAL

1                     **DAY THREE**

2  V I R G I N I A:

3      IN THE CIRCUIT COURT OF ARLINGTON COUNTY

4  - - - - - - - - - - - - - X

5  ANDREW F. CLARK,          :

6          Plaintiff,    :

7     vs.            : Case No: CL14-1986

8  MICHELLE A. CLARK,      :

9         Defendant.    :

10  - - - - - - - - - - - - - X

11                      Arlington, Virginia
                              July 10, 2015

12         The above-entitled matter came on for

13  hearing before THE HONORABLE DANIEL S. FIORE, II,

14  Judge in and for the Circuit Court of Arlington

15  County, Arlington, Virginia, before Jeannie M.

16  LaCroix, a Verbatim Reporter and Notary Public in

17  and for the Commonwealth of Virginia, when there

18  were present on behalf of the respective parties:

19

20

21

22

23

APPEARANCES:

    On behalf of the Plaintiff:

        RONALD L. HISS, ESQUIRE
        RENE ROCHELEAU-LUCERO, ESQUIRE
        2020 North 14th Street, Suite 510
        Arlington, Virginia 22201

    On behalf of the Defendant:

        MICHAEL L. POE, ESQUIRE
        ARQUILLA & ASSOCIATES, PLC
        Oak Tree Plaza
        6078 Franconia Road, Suite D
        Alexandria, Virginia 22310-4425

    Guardian ad litem:

        ROBIN L. ROBB, ESQUIRE
        6045 Wilson Boulevard, Suite 101
        Arlington, Virginia 22205

PROCEEDINGS

1  
2     (Whereupon, the court reporter was
3  previously sworn by the court in the above-entitled
4  matter.)
5     THE COURT:  Sorry to interrupt your party.
6     MR. HISS:  Your late to the party.
7     THE COURT:  Yes, I guess.
8     MR. HISS:  Your Honor, I would like to
9  report that Mr. Poe and I had the most productive 15
10 minutes of this entire two year odyssey.
11    THE COURT:  Good, glad to hear it.
12    MR. HISS:  All the numbers are resolved.
13    THE COURT:  All right.
14    MR. HISS:  We're going to prepare a more
15 detailed order, because we have some approximations.
16    THE COURT:  Okay.
17    MR. HISS:  There will be no legal argument
18 on the part of Mr. Poe nor myself.
19    THE COURT:  Okay.
20    MR. HISS:  We've resolved the spousal
21 support, rehabilitative.  We've resolved the buy-out
22 number for the house.  We've resolved the terms for
23 the buy-out number for the house.

1    The only thing we're going to argue about

2    is we don't think the guardian ad litem should be

3    paid.

4            MS. ROBB:  (The guardian laughs.)

5            MR. POE:  I'm also still requesting

6    attorney's fees, Your Honor.

7            MR. HISS:  And his request for attorney's

8    fees, which I'm going to argue.

9            THE COURT:  Okay.

10           MS. ROBB:  And I do have a custody and

11   visitation order.

12           MR. HISS:  And it's agreed to.

13           MS. ROBB:  And it's --

14           THE COURT:  Okay.

15           MS. ROBB:  Well, it has got the objections

16   noted to whatever.

17           THE COURT:  Sure.

18           MS. ROBB:  The only thing that is left

19   open is I don't know how long their clients need to

20   pay me.

21           THE COURT:  Well, what's going to happen

22   with the house?  That may answer that question.

23           MR. HISS:  We've agreed on a number on the

1  house.

2       Mr. Clark, how long will it take you to

3  know whether you can buy her out?

4       MR. CLARK:  Your Honor, I plan to buy her

5  out.

6       MR. HISS:  It's a payment plan.

7       THE COURT:  It's a payment plan?

8       MR. HISS:  It's a payment plan for her

9  interest in the house.

10       THE COURT:  So Mr. Clark is entering into

11  a payment plan with Mrs. Clark?

12       MR. HISS:  Judge Fiore, I wear hearing

13  aids.  I couldn't wear them today, because my ears

14  hurt so badly.  So you've got to speak up; and I'm

15  sorry about that.

16       THE COURT:  So Mr. Clark is going to

17  purchase Mrs. Clark's interest over a period of

18  time?

19       MR. HISS:  Yes, sir.

20       THE COURT:  Okay.

21       MR. HISS:  We've agreed to the terms.

22       THE COURT:  Okay.  So when is this going

23  to start?

1        MR. HISS:  September 1st.

2        Mr. Clark, how fast can you get her the

3   downpayment?

4        MR. CLARK:  Let's say a week.

5        MR. HISS:  The first big chunk to get her

6   on her feet is in a week.

7        THE COURT:  All right.  So 30 days to pay

8   the GAL's fees?

9        MS. ROBB:  That's fine with me.

10       MR. CLARK:  I will have my share of the

11  fees.

12       MR. POE:  My client may need a little bit

13  more time on that, Your Honor.

14       THE COURT:  Okay.

15       MR. POE:  I mean, we calculated the first

16  payment as what she needs to get started with moving

17  out and all of these up front costs.

18       THE COURT:  How about half in 30 days and

19  the balance in 45 days?

20       MR. POE:  Yes, sir.

21       THE COURT:  Okay.  That makes it a little

22  easier for her.

23       MR. HISS:  It's just a matter of how his

1  resources --

2  THE COURT: All right.

3  MR. HISS: We see a priority, Your Honor,

4  of getting Mrs. Clark a chunk of money to get on her

5  feet. And then the next priority is to get Mrs.

6  Robb paid as much as we can, because God knows she

7  has earned it and worked her rear off.

8  THE COURT: All right. That's why I said

9  half in 30 and the balance in 45.

10  So how about the transition for the

11  physical custody, has that been resolved?

12  MS. ROBB: That is resolved, Judge. We

13  have a schedule that's set forth in this order.

14  THE COURT: Okay.

15  MS. ROBB: And what it essentially is, is

16  like from Sunday night to the following Sunday

17  night, and alternating.

18  THE COURT: All right. Let me take a look

19  at it.

20  MS. ROBB: Sure. It's not stapled,

21  because I know they scan them.

22  THE COURT: That's okay. Then at the time

23  that school starts, you've worked that out also?

1    MS. ROBB: Yes. Essentially the last week

2    before school, he will be in Mr. Clark's care.

3    (Whereupon, there was a brief pause while

4    the judge read through the agreed visitation

5    schedule.)

6    THE COURT: All right. So then on the

7    alternating weeks, what time does the visitation

8    begin?

9    MS. ROBB: Well, the trade off is at 7:00

10   p.m.

11   THE COURT: So July 10th to July 12th --

12   MS. ROBB: Oh, no. July 10th -- Mr. Clark

13   worked something out with Mrs. -- It's his weekend

14   this weekend. But Mrs. Clark's sister is still in

15   town, so Mr. Clark will pick Mason up tonight for

16   the weekend.

17   THE COURT: Okay. And then the return on

18   the 12th is at 7:00? The pick up on the --

19   MS. ROBB: The 12th is at 7:00.

20   THE COURT: I see. All right, fine.

21   MS. ROBB: I think there's a paragraph

22   after that that says that.

23   THE COURT: Yes.

1    And I see Mrs. Clark isn't here.

2    MR. POE: She's not here, Your Honor. I'm

3  not sure where she is. But I've been in touch with

4  her, and she is in agreement.

5    MR. HISS: Mr. Poe indicated that he has

6  authority to do all of these things.

7    MR. POE: Yes.

8    THE COURT: And she is aware of all of

9  these terms?

10    MR. POE: She gave me authority, yes.

11    MS. ROBB: We discussed the schedule last

12  night with the parties. After the court recessed,

13  we continued to work; and both parties agreed to the

14  schedule.

15    THE COURT: Well, I'm a little concerned

16  that she's not here, because I'm not quite sure what

17  message is being sent.

18    MR. POE: I believe there may have been a

19  miscommunication as to whether or not her presence

20  was required.

21    THE COURT: It's not required. I did

22  mention yesterday that I would see everybody. I

23  believe I said "even the parties" here. It wasn't a

1  mandatory appearance, but I hope it's not the wrong

2  signal.

3      MR. POE:  I don't believe it is, Your

4  Honor.

5      THE COURT:  Okay.  All right, this order

6  is entered.

7      MS. ROBB:  And I don't know if the court

8  wanted my affidavit.

9      THE COURT:  Yes, please.  Absolutely.

10      MS. ROBB:  The parties already have copies

11  of it.

12      THE COURT:  All right.  And the remaining

13  issue is what?

14      MR. POE:  Attorney's fees, Your Honor.

15      THE COURT:  Okay.  All right, you may

16  proceed.

17      MR. POE:  If I could pass up my affidavit?

18      THE COURT:  Okay.

19      MR. POE:  By way of explanation, the

20  amount on there is lower than it ordinarily would be

21  for this type of case.  The reason for that is that

22  Mrs. Clark came to me as part of the John Grad

23  Reduced Income Program which is through the

1  Alexandria Bar Association.

2      MR. HISS:  Your Honor, I'm going to

3  interrupt.  I have absolutely no problem with Mr.

4  Poe's number.

5      THE COURT:  With the reasonableness and

6  the necessity of the fees?

7      MR. HISS:  Yes.  He has done a yeoman's

8  job at a reduced rate.

9      THE COURT:  All right.  Okay.  Then the

10  question is:  Why should your client be awarded

11  attorney's fees?

12      MR. POE:  Well, Your Honor, I offered very

13  early in this case to resolve things on a piecemeal

14  basis.

15      It was pretty clear that we weren't going

16  to resolve custody and visitation; it's not the type

17  of case, given the facts here, where that could have

18  been resolved.  But I certainly was open to

19  resolving every other issue on a piecemeal basis.

20      And, you know, with the trial upcoming, I

21  sent over a proposed ED worksheet and offered to

22  stipulate to all the numbers that I had listed

23  there.  And that could have saved us a great deal of

time with respect to this case.

And the offer that was on the table, with respect to spousal support, what I was asking for was $2,200 indefinitely, but that was only because the only counter offer was zero.

So I remained willing throughout the case, to resolve all of the issues. And I would ask the court for attorney's fees. Thank you.

MR. HISS: Your Honor, very briefly. Mr. Poe was very candid with me, the $2,200 I never did receive. He said, you know, since we didn't do it piecemeal, he did not send it over to us. The first time I heard it was at the beginning of court.

Our offer started at zero for spousal support, because, frankly, we weren't sure how the property was going to shake out and whether there was going to be a need, in her case, and where the custody was going to go. My client's marching orders to me was "get custody," because of the obviously reasons.

I'd like to point out to the court that there were two show causes where this court found Mrs. Clark in contempt. You found that she violated

this court's orders.

I'm going to pass up my attorney's fees statement, which is certainly more than Mr. Poe's, I believe. And I would say that fully 25% of that bill is due to these unnecessary show causes that we had to put on to try to get visitation and try to get Mrs. Clark to do what she was supposed to do.

In this case I would ask the court to simply allow Mr. Clark to pay his attorney's fees and Mrs. Clark to pay her attorney's fees.

There was no stalling on our part. There was no obstruction. And there were a couple of attorneys involved prior to me, and I think they were prior to Mr. Poe. The only actual issue was the spousal support.

Coming in with $2,200 indefinite versus my offer of zero, probably was a nonstarter. But, at the same time, as you can see the number was something that we had to find out what was going to happen with custody, we had to find out what was going to happen with the house, then we could realistically -- And I didn't want to bifurcate this thing.

1   The guardian ad litem had suggested that

2   we ask this court to bifurcate it on Wednesday.  I

3   didn't want to do that -- that was me digging my

4   heels in -- I wanted this court to resolve this

5   matter in the next three days, so we could take care

6   of the house and the child, which I think we've

7   done.

8   I give Mr. Poe all the credit in the

9   world, he had a very trying situation.  But I will,

10  once again, reiterate there were two show causes

11  where this court found that she was in contempt, and

12  there have been no repercussions because of that.

13  And if for no other reason, I think the attorney's

14  fees should be carried by the individual parties --

15  borne by the individual parties.

16  THE COURT:  All right.  Anything further?

17  MR. POE:  Just that I forgot to mention

18  there was a show cause that we had to file based on

19  trying to get the marital residence sold and

20  enforcing the October pendente lite order that

21  obligated it to be put on the market.  And that

22  required two hearings.

23  The first of which the argument was that

1    the language in the order was ambiguous, and we had

2    to have a judge rule that it was not ambiguous, and

3    that the house needed to be put on the market.

4          And then a separate hearing was required

5    to decide between the parties' realtors, after Mr.

6    Clark already indicated that he was not in agreement

7    that the house should be sold.

8          THE COURT:  All right.  Your request for

9    attorney's fees is denied.

10          Do you have a date for the order to be

11    submitted?

12          MR. HISS:  Your Honor, this court gave us

13    permission to set this matter down for an ore tenus

14    on Monday or Tuesday.  We'd like to ask the court to

15    allow us to do that on Monday, so you can have the

16    grounds for the divorce.

17          THE COURT:  I won't be here.

18          MR. HISS:  Oh.

19          THE COURT:  I can do it the following

20    Monday, the 20th -- Actually, the 21st would be

21    better for me.

22          MR. HISS:  Does that affect -- We just

23    need to put the grounds in competently.

16

1       THE COURT:  Does that affect what?

2       MR. HISS:  Everything.

3       THE COURT:  Well, it doesn't affect me.

4  So the 21st for ex parte proof or for ore tenus,

5  rather?

6       MR. HISS:  I have a criminal matter that

7  day, Your Honor.  How about --

8       THE COURT:  What time is your criminal

9  matter?

10      MR. HISS:  9:00.

11      THE COURT:  Well, I can give you a lunch

12  time on the 21st if you want it.

13      MR. HISS:  That should work.

14      THE COURT:  Okay, 12:30.

15      MR. HISS:  And if I'm not able to do it,

16  Ms. Lucero can do it.

17      THE COURT:  All right.  And then you still

18  owe an order?  Do you have an order that still has

19  to be submitted?

20      MR. POE:  If it pleases the court, I would

21  prefer that we hammer out all of the details and

22  then submit it.

23      THE COURT:  That's fine.  So you can do

1   that on the same day?

2           MR. POE:  Yes.

3           MR. HISS:  On the 21st we can just --

4           THE COURT:  Yes, you'll work it out and

5   hand the order up on the 21st.

6           MR. HISS:  We're literally dollars and

7   cents, not tens and twenties.

8           THE COURT:  Okay.  All right, that's fine.

9           Anything else?

10          MS. ROBB:  No, sir.  Thank you so much.

11          THE COURT:  Thank you.  And, Mrs. Robb,

12  thank you again for your report, it was very

13  helpful.

14          All right, thank you.

15          MR. POE:  Thank you, Your Honor.

16          MS. LUCERO:  Thank you, Your Honor.

17          (Whereupon, the hearing in the above-

18  entitled matter was concluded.)

19

20

21

22

23

## CERTIFICATE OF REPORTER

1

2          I, **Jeannie M. LaCroix,** the stenographic

3   reporter who was duly sworn to well and truly report

4   the foregoing proceedings, do hereby certify that

5   they are true and correct to the best of my

6   knowledge and ability; and that I have no interest

7   in said proceedings, financial or otherwise, nor

8   through relationship with any of the parties in

9   interest or their counsel.

10         IN WITNESS WHEREOF, I have hereunto set my

11  hand this __17th__ day of __August__, 2015.

12

13

14  _____
            Jeannie M. LaCroix

15

16  

17

18

19

20

21

22

23

JEANNIE M. LACROIX
P.O. BOX 33, OCCOQUAN, VA 22125-33
(703) 690-3505